IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

NOEL RICHARDSON,

      Petitioner,

v.                       CIVIL ACTION NO. 3:06cv109

DOMINIC GUTIERREZ,

      Respondent.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On October 13, 2006, the *pro se* petitioner, Noel Richardson, an inmate at FCI-Morgantown, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, seeking an order directing the Bureau of Prisons to transfer him to a Community Corrections Center ("CCC") for the last six months of his term of imprisonment. On that same date, petitioner paid the required $5.00 filing fee. By Order entered on November 3, 2006, the Court ordered the respondent to answer the petition. On December 4, 2006, the respondent filed a Response to the Order to Show Cause. Along with the response, the Government provided the Court with several exhibits, including: (1) the Declaration of Alecia D. Sankey; (2) a SENTRY computer-generated "Public Information Inmate Data" regarding petitioner; (3) a summary of each of the four remedies that petitioner has filed since his designation at FCI Morgantown; (4) the Declaration of Lisa Shahan; and (5) a copy of petitioner's Initial Classification Review dated July 26, 2006. On December 8, 2006, petitioner filed a Motion for Summary Judgment, and on December 20, 2006, he filed a reply to the response. This matter is pending before me for an initial review and Report and Recommendation pursuant to LR PL P 83.09.

1

## II. FACTS

On March 14, 2006, Petitioner was sentenced in the Southern District of West Virginia to a twenty-four (24) month term of confinement for subscribing to and filing false income tax returns in violation of 26 U.S.C. § 7206(1). (Doc. 5-3) Assuming good time credit, petitioner's projected release date is March 9, 2008. (Doc. 5-3). Petitioner was designated to FCI Morgantown on June 13, 2006. (Doc.5-3). Petitioner has not yet been reviewed for CCC placement. (Doc. 5-5)

## III. CONTENTIONS OF THE PARTIES

Petitioner raises the following ground in his Application for Habeas Corpus:

(1) The Bureau of Prisons' policy of transferring prisoners to a CCC for the last 10 % of their term of imprisonment has been ruled unconstitutional.

The Government contends that the petition should be dismissed because:

(1) Petitioner has failed to exhaust his administrative remedies;

(2) The facts of the complaint are not yet ripe for review;

(3) The February 2005 Rules are valid and entitled to substantial deference; and

(4) The Bureau properly exercised its discretion in a categorical manner by limiting placement in CCCs to the last ten percent of an inmate's sentence served, not to exceed six months.

## IV. HISTORICAL BACKGROUND

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts, [1] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and

---

[1] See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

>     (5) any pertinent policy statement issued by the Sentencing Commission
>     pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement ... during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program ... or shock incarceration program) ...

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

## IV. <u>ANALYSIS</u>

### A. <u>Exhaustion</u>

The petitioner admits that he has not exhausted his administrative remedies alleging that raising the claims through the internal grievance system would be moot because the issues raised in the petition can only be resolved in the U.S. District Court. The undersigned notes that federal inmates generally are required to exhaust their administrative remedies prior to filing a § 2241 petition. See, e.g., <u>Martinez v. Roberts</u>, 804 F.2d 570 (9th Cir. 1996); <u>Moscato v. Federal Bureau</u>

4

of Prisons, 98 F.3d 757 (3d Cir. 1996); Colton v. Ashcroft, 299 F.Supp. 2d 681 (E.D. Ky (2004). However, a number of courts have found that requiring inmates to challenge the BOP's policy regarding placement in a CCC through the administrative process would be futile. See, e.g., Fagiolo v. Smith, 236 F. Supp. 589, 590 (M.D. Pa. 2004)("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c)"); Zucker v. Meinfee, 2004 WL 102779 (S.D.N.Y. Jan 21, 2004)("[G]iven the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case" the petitioner's failure to exhaust was excused as being futile). However, because the undersigned has determined that the issues raised in his petition are not yet ripe for adjudication, a decision whether exhaustion is required in this matter need not be reached.

## B. Whether Petition Raises Issues Which Are Ripe for Adjudication

The Supreme Court has recognized that "[t]he ripeness doctrine 'is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Metzenbaum v. Fed. Energy Regulatory Comm'n, 675 F.2d 1282, 1289-1290 (C.A.D.C. 1982) (citations omitted). The basic rationale of ripeness is

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

5

Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967) (overruled on other grounds).

In this case, petitioner is anticipating that the BOP will apply 28 C.F.R. § 570.21 in a manner so as to limit his eligibility for placement in a CCC to the last 10% of his sentence. Because at least three Courts of Appeals have found that the BOP regulation limiting a prisoner's placement in a CCC to the lessor of ten percent or six months of his sentence was an improper exercise of the BOP's rulemaking authority, the petitioner seeks a preemptive ruling requiring the BOP to place him in a CCC for the last six months of his sentence.[2]

However, even if this Court were to agree with the three Courts of Appeals, this would mean only that the petitioner must be considered for CCC placement for the last six months of incarceration, not that this Court can order his placement. A careful reading of the three appellate decisions clearly establishes that the BOP regulations have been held invalid only to the extent that they limit a prisoner's placement in a CCC to the lessor of 10% of his sentence or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b).

The decisions issued by the three Courts of Appeals do not apply to this petitioner because he is not yet near the end of his sentence term. While Congress has mandated CCC placement for federal prisoners, at best, that placement is not required until the last six months of incarceration.[3] However, in order to facilitate that placement, under P.S. 7310.04, the BOP considers an inmate for

---

[2]The Fourth Circuit Court of Appeals has not yet ruled on the legality of 28 C.F.R. § 570.21. However, the Third, Eighth, and Second Circuits have ruled the same improper. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3rd Cir. 2005); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Levine v. Apker, 455 F.2d 71 (2nd Cir. 2006).

[3]The statutory mandate for placement of an inmate in pre-release custody is set forth in 18 U.S.C. § 3624(c). Under this provision, petitioner may receive up to a six month stay in a CCC.

6

CCC placement when he or she is within eleven to thirteen months of his or her projected release date. (Doc. 5-5. P. 2) To date, petitioners' Unit Team has made no official recommendation about the length of his CCC placement. Id. Instead, an Initial Classification Review was conducted on July 26, 2006, during which petitioner was preliminarily informed that he may only be eligible for 2.7 months of CCC placement. Nonetheless, petitioner has not even been deemed eligible for CCC placement yet. Only when petitioner is within eleven to thirteen months of his projected release date will his Unit Team assess his eligibility for CCC placement and complete an official CCC referral.[4] At that time, petitioners' claim may be ripe for review, depending on the circumstances of the Unit Teams official referral.

If petitioners' Unit Team recommends CCC placement for the last six months of his term of incarceration, then he will have received the maximum benefit for which 18 U.S.C. § 3624(c) provides, and he will have no need of this Court's intervention. If, on the other hand, his Unit Team relies on 28 C.F.R. § 570.20-21 and recommends a categorical placement in a CCC facility of 2.7 months (i.e., the last 10% of his total sentence),[5] then this matter may be ripe for a habeas petition pursuant to 28 U.S.C. § 2241 and a determination whether the BOP's regulation conflicts with § 3621(b) and is, therefore, invalid.

---

[4] Petitioner's next program review will be held in January 2007. (Doc. 5-5, p.2)

[5] In light of the decisions made by the Second, Third and Eighth Circuits, when reviewing petitioner's eligibility for CCC placement during the appropriate review time, it may be prudent for the BOP to consider the five factors set forth in 18 U.S.C. § 3621(b). To reiterate, those factors include: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

**B. Respondent's Other Grounds for Dismissal**

In addition to arguing the petition should be dismissed for failure to exhaust administrative remedies and because the matter raised is not ripe for review, the respondent also advances substantive grounds for dismissal including arguments that the 2005 Rules are valid and entitled to substantial deference. However, as the respondent has properly noted, the petition should be dismissed because the issues are not yet ripe for adjudication. Therefore, the Court should not address the respondent's substantive grounds for dismissal until such time as a petition is filed which is ripe for adjudication.

**D. Petitioner's Motion for Summary Judgment**

On December 8, 2006, the petitioner filed a Motion for Summary Judgment. As grounds for his motion, the petitioner stated that the respondent did not file a response to the Order to show Cause, and thus, had failed to show any reason why the writ should not be granted.

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Here, the respondent did file a response on December 4, 2006, within the time frames set forth in the Order to Show Cause. Accordingly, the petitioner has not asserted a proper ground for the issuance of summary judgment. Furthermore, for the reasons state above, the petitioner's application for a writ of habeas corpus is due to be dismissed, and he is clearly not entitled to summary judgment.

## IV.  RECOMMENDATION

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition (Doc. 1) be **DENIED and DISMISSED WITHOUT PREJUDICE** and the petitioner's Motion for Summary Judgment (Doc. 6) be **DENIED**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner and to counsel of record.

DATED: January 4, 2007

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE