IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

U.S. DISTRICT COURT
FILED AT WHEELING, WV

JUL - 3 2007

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

NOEL RICHARDSON,

        Petitioner,

v.

                                      CIVIL ACTION NO. 3:06-CV-109
                                      (BAILEY)

DOMINIC GUTIERREZ,

        Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

### I.    Introduction

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. By Standing Order entered on March 24, 2000, this action was referred to Magistrate Judge Seibert for submission of proposed report and a recommendation ["R & R"]. Magistrate Judge Seibert filed his R & R on January 4, 2007 [Doc. 8]. In that filing, the magistrate judge recommended that this Court deny the petitioner's Motion for Summary Judgment [Doc. 6] and to dismiss without prejudice the petitioner's § 2241 Habeas Petition [Doc. 1].

Pursuant to 28 U.S.C. § 636 (b) (1) (c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*,

727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R & R were due by January 19, 2007, within ten (10) days after being served with a copy of the R & R pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The petitioner timely filed his Objections [Doc. 11] on January 18, 2007. Accordingly, this Court will conduct a *de novo* review only as to the portions of the report and recommendation to which the petitioner objected. The remaining portions of the R & R to which the petitioner did not object will be reviewed for clear error.

## II.    Factual and Procedural Background

On October 13, 2006, the *pro se* petitioner, Noel Richardson, an inmate at FCI Morgantown, filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, seeking an order directing the Bureau of Prisons to transfer him to a Community Corrections Center ("CCC") for the last six months of his term of imprisonment. On that same date, the petitioner paid the required $5.00 filing fee. By Order entered on November 3, 2006, the Court ordered the respondent to answer the petition. On December 4, 2006, the respondent filed a Response to the Order to Show Cause. Along with the response, the Government provided the Court with several exhibits, including: (1) the Declaration of Alecia D. Sankey; (2) a SENTRY computer-generated "Public Information Inmate Data" regarding petitioner; (3) a summary of each of the four remedies that petitioner has filed since his designation at FCI Morgantown; (4) the Declaration of Lisa Shahan; and (5) a copy of the petitioner's Initial Classification Review dated July 26, 2006. On December 8, 2006, the petitioner filed a Motion for Summary Judgment, and on December 20, 2006, he filed a reply to the response.

On March 14, 2006, the petitioner was sentenced in the Southern District of West

Virginia to a twenty-four (24) month term of confinement for subscribing to and filing false income tax returns in violation of 26 U.S.C. § 7206(1) [Doc. 5-3]. Assuming good time credit, the petitioner's projected release date is March 9, 2008 [Doc. 5-3]. The petitioner was designated to FCI Morgantown on June 13, 2006 [Doc.5-3]. The petitioner has not yet been reviewed for CCC placement [Doc. 5-5].

## III. HISTORICAL BACKGROUND

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. *See* BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624 (c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First

and Eighth Circuits, as well as many district courts,[1] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

The Bureau shall designate the place of the prisoner's imprisonment.

The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence -

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging

---

[1] *See Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004); *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Cato V. Menifee*, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement ... during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21.

The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

When will the Bureau designate inmates to community confinement?

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program ... or shock incarceration program) ...

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

## IV.    ANALYSIS

### A. Exhaustion

The petitioner admits that he has not exhausted his administrative remedies alleging that raising the claims through the internal grievance system would be moot because the issues raised in the petition can only be resolved in the United States District Court. Federal inmates generally are required to exhaust their administrative remedies prior to

filing a § 2241 petition. *See*, e.g., ***Martinez v. Roberts***, 804 F.2d 570 (9th Cir. 1996); ***Moscato v. Federal Bureau of Prisons***, 98 F.3d 757 (3d Cir. 1996); ***Colton v. Ashcroft***, 299 F.Supp. 2d 681 (E.D. Ky (2004).

However, a number of courts have found that requiring inmates to challenge the BOP's policy regarding placement in a CCC through the administrative process would be futile. *See*, e.g., ***Fagiolo v. Smith***, 236 F. Supp. 589, 590 (M.D. Pa. 2004)("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c)"); ***Zucker v. Meinfee***, 2004 WL 102779 (S.D.N.Y. Jan 21, 2004)("[G]iven the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case" the petitioner's failure to exhaust was excused as being futile). However, because the issues raised in his petition are not yet ripe for adjudication, a decision whether exhaustion is required in this matter need not be reached.

## B. Whether Petition Raises Issues Which Are Ripe for Adjudication

The Supreme Court has recognized that "[t]he ripeness doctrine 'is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" ***Nat'l Park Hospitality Ass'n v. Dep't of Interior***, 538 U.S. 803, 807 (2003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." ***Metzenbaum v. Fed. Energy Regulatory Comm'n***, 675 F.2d 1282, 1289-1290 (C.A.D.C. 1982) (citations omitted). The basic rationale of ripeness is

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to

protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967) (overruled on other grounds).

In this case, the petitioner is anticipating that the BOP will apply 28 C.F.R. § 570.21 in a manner so as to limit his eligibility for placement in a CCC to the last 10% of his sentence. Because at least three Courts of Appeals have found that the BOP regulation limiting a prisoner's placement in a CCC to the lesser of ten percent or six months of his sentence was an improper exercise of the BOP's rule-making authority, the petitioner seeks a preemptive ruling requiring the BOP to place him in a CCC for the last six months of his sentence.[2]

However, even if this Court were to agree with the three Courts of Appeals, this would mean only that the petitioner must be considered for CCC placement for the last six months of incarceration, not that this Court can order his placement. A careful reading of the three appellate decisions clearly establishes that the BOP regulations have been held invalid only to the extent that they limit a prisoner's placement in a CCC to the lessor of

---

[2] The Fourth Circuit Court of Appeals has not yet ruled on the legality of 28 C.F.R. § 570.21. However, the Third, Eighth, and Second Circuits have ruled the same improper. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3rd Cir. 2005); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Levine v. Apker, 455 F.2d 71 (2nd Cir. 2006).

10% of his sentence or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b).

The decisions issued by the three Courts of Appeals do not apply to this petitioner because he is not yet near the end of his sentence term. While Congress has mandated CCC placement for federal prisoners, at best, that placement is not required until the last six months of incarceration. However, in order to facilitate that placement, under P.S. 7310.04, the BOP considers an inmate for CCC placement when he or she is within eleven to thirteen months of his or her projected release date [Doc. 5-5. P. 2]. To date, the petitioners' Unit Team has made no official recommendation about the length of his CCC placement. *Id.* Instead, an Initial Classification Review was conducted on July 26, 2006, during which the petitioner was preliminarily informed that he may only be eligible for 2.7 months of CCC placement. Nonetheless, the petitioner has not even been deemed eligible for CCC placement yet. Only when the petitioner is within eleven to thirteen months of his projected release date will his Unit Team assess his eligibility for CCC placement and complete an official CCC referral. At that time, the petitioner's claim may be ripe for review, depending on the circumstances of the Unit Teams official referral.

If the petitioner's Unit Team recommends CCC placement for the last six months of his term of incarceration, then he will have received the maximum benefit for which 18 U.S.C. § 3624(c) provides, and he will have no need of this Court's intervention. If, on the other hand, his Unit Team relies on 28 C.F.R. § 570.20-21 and recommends a categorical placement in a CCC facility of 2.7 months (i.e., the last 10% of his total sentence), then this matter may be ripe for a habeas petition pursuant to 28 U.S.C. § 2241, and a determination whether the BOP's regulation conflicts with § 3621(b) and is, therefore, invalid.

## C. Respondent's Other Grounds for Dismissal

In addition to arguing the petition should be dismissed for failure to exhaust administrative remedies and because the matter raised is not ripe for review, the respondent also advances substantive grounds for dismissal including arguments that the 2005 Rules are valid and entitled to substantial deference.  However, as the respondent has properly noted, the petition should be dismissed because the issues are not yet ripe for adjudication.  Therefore, the Court should not address the respondent's substantive grounds for dismissal until such time as a petition is filed which is ripe for adjudication.

## D. Petitioner's Motion for Summary Judgment

On December 8, 2006, the petitioner filed a Motion for Summary Judgment [Doc. 6].  As grounds for his Motion, the petitioner stated that the respondent did not file a response to the Order to show Cause [Doc. 4], and thus, had failed to show any reason why the writ should not be granted.   From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Here, the respondent did file a response on December 4, 2006 [Doc. 5], within the time frames set forth in the Order to Show Cause.  Accordingly, the petitioner has not asserted a proper ground for the issuance of summary judgment.  Furthermore, for the reasons state above, the petitioner's application for a writ of habeas corpus is due to be dismissed, and he is clearly not entitled to summary judgment.

## V.    Conclusion

It is the opinion of the Court that the **Magistrate Judge's Report and Recommendation** [Doc. 8] should be, and is, hereby **ORDERED ADOPTED**. Accordingly, the Court hereby **DENIES** and **DISMISSES without prejudice** the petitioner's § 2241 petition [Doc. 1] and **DENIES** the petitioner's Motion for Summary Judgment [Doc. 6].

The Clerk is directed to mail true copies of this Order to all counsel of record and the *pro se* petitioner.

**DATED:**  July 2, 2007.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE